IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PETER A. BORLO
:
   v. : Civil Action No. DKC 11-1168
:
NAVY FEDERAL CREDIT UNION
:

**MEMORANDUM OPINION**

Presently pending and ready for review in this diversity action is a motion to dismiss filed by Defendant Navy Federal Credit Union ("Navy Federal"). (ECF No. 16). The issues have been fully briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

I. **Background**

Plaintiff alleges the following facts either in his complaint or his motion papers. Plaintiff Peter A. Borlo is a resident of Maryland. In October 2005, Borlo was hired by a company called The Manhattan Group, Inc., which was owned by Darryl S. Paxton.[1] At some point before November 2006, Borlo and Paxton entered into a separate business venture together. They formed a limited liability company called 12th Street Venture to acquire certain real property, refurbish and renovate it, and

---

[1] Paxton has also gone by the name "David Sosa."

sell it for a profit.  Paxton persuaded Borlo to take out a loan solely in Borlo's name to carry out their business plan.[2]  After purchasing the property, however, Paxton did not carry out any of their refurbishment or renovation plans.  Without improvements, the property never sold, and Borlo was eventually unable to continue making payments on the loan.

In January 2008, Borlo filed for bankruptcy under Chapter 11.[3]  To prepare his bankruptcy petition, Borlo performed a credit check to identify creditors.  As a result of this credit check, Borlo learned that in November 2006, Paxton had taken out a $30,000.00 installment loan ("the installment loan") using Borlo's name from Navy Federal, though Borlo never authorized such a transaction.  Paxton knew the details of Borlo's identity based on their work together at 12th Street Venture.  No payments were ever made on the installment loan.

On March 26, 2009, the bankruptcy court entered an order of discharge.  On October 27, 2009, Navy Federal sent a letter to Borlo threatening to sue if he did not pay back the installment loan.

---

[2] This loan was made by a financial institution different from Defendant.

[3] On September 10, 2008, Borlo's bankruptcy case was converted from Chapter 11 to Chapter 7.

On January 7, 2011, Borlo filed a complaint against Navy Federal in the Circuit Court for Montgomery County, Maryland. After service, Navy Federal timely removed to this court on the basis of diversity of citizenship. (ECF No. 1). The complaint contains two counts: one for negligence and one for damage to credit and credit standing. (ECF No. 2).

On May 11, 2011, Navy Federal filed the pending motion to dismiss. (ECF No. 16). Borlo filed opposition papers on May 31, 2011. (ECF No. 17). Navy Federal replied on June 14, 2011. (ECF No. 18).

## II. Standard of Review

Navy Federal moves to dismiss Borlo's complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject-matter jurisdiction due to lack of standing and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Because jurisdiction is a prerequisite to any court ruling on the merits, Navy Federal's arguments pursuant to Rule 12(b)(1) will be considered first.

To begin, it is not precisely correct to refer to the two doctrines of standing and subject-matter jurisdiction interchangeably for purposes of a motion to dismiss, although they are related. *See Miller v. Pac. Shore Funding*, 224 F.Supp.2d 977, 994 (D.Md. 2002) ("Standing . . . is a fundamental component of a court's subject-matter jurisdiction."); *see also* 13B Charles Alan Wright, Arthur R.

3

Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3531.15 (3ᵈ ed. 2008) ("Article III standing is treated as an issue of subject-matter jurisdiction."). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In contrast, "[s]ubject matter jurisdiction defines the court's authority to hear a given type of case; it represents the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S.Ct. 1862, 1866 (2009) (internal quotation marks and citations omitted). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for '[f]ederal-question' jurisdiction, § 1332 for '[d]iversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006).

Despite these distinctions, courts generally analyze issues of standing pursuant to Rule 12(b)(1). *See Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480 (4ᵗʰ Cir. 2003) (affirming district court's dismissal of complaint for lack of standing pursuant to Rule 12(b)(1)); *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 247-48 (2ᵈ Cir. 1994) (holding that Rule

4

12(b)(1) is the appropriate method by which to analyze standing issue); *Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F.Supp.2d 510, 514-15 (D.Md. 2011) (analyzing standing issue under Rule 12(b)(1)). According to the Second Circuit, because the standing "inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise," it should be analyzed under Rule 12(b)(1). *See Thompson*, 15 F.3d at 247-48. Consequently, Navy Federal's argument that Borlo lacks standing to bring this action is best analyzed under Rule 12(b)(1). The Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

**III. Analysis**

Navy Federal argues that Borlo lacks standing because all of Borlo's legal and equitable interests at the time of filing his bankruptcy, including the claims asserted here, became the property of the bankruptcy estate, and Borlo's right to pursue those claims extinguished once a trustee was appointed. (ECF No. 16, at 4-6). In response, Borlo appears to concede that if a debtor knows a cause of action exists when filing his bankruptcy petition, then that claim cannot later be pursued by the debtor. (*See* ECF No. 17, at 3-4 ("Certainly, a cause of

action which a debtor knows exists prior to the filing of his bankruptcy petition is properly an issue to be determined by the bankruptcy court.")). He argues, however, that he did not learn that his identity had been stolen to obtain the fraudulent installment loan until *after* his bankruptcy was completed. (*Id.* at 3). In addition, he contends that Navy Federal did not pursue repayment of the installment loan until October 2009, so Navy Federal did not consider the installment loan an asset of the bankruptcy estate. (*Id.*).

The Bankruptcy Code defines property of a debtor's estate as including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 535 (4th Cir. 1996). Once the case is filed, "the debtor's interests in property vest in the bankruptcy estate, and the debtor surrenders the right to dispose of or otherwise control the estate property. The bankruptcy trustee, as representative of the estate, has exclusive authority to use, sell, or lease estate property." *Miller v. Pac. Shore Funding*, 287 B.R. 47, 49-50 (D.Md. 2002) (internal quotation marks and citations omitted), *aff'd*, 92 Fed. App'x 933 (4th Cir. 2004). Accordingly, "the trustee alone has standing to raise issues before the bankruptcy court and to prosecute appeals. A trustee is the representative of the bankrupt's estate and has the capacity to

sue or be sued." *Richman v. First Woman's Bank (In re Richman)*, 104 F.3d 654, 657 (4th Cir. 1997).

"Property of the estate includes all of the debtor's interests in any cause of action that has accrued prior to the bankruptcy petition." *Miller*, 287 B.R. at 50; *see also Goodman v. Phillip R. Curtis Enters., Inc.*, 809 F.2d 228, 232 n.6 (4th Cir. 1987). "To determine when a cause of action accrues, and therefore whether it accrued pre-bankruptcy and is an estate asset, the Court looks to state law." *Boland v. Crum (In re Brown)*, 363 B.R. 591, 605 (Bankr.D.Mont. 2007); *see also Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001).[4] When undertaking this analysis, it is important to distinguish between "accrual of an action for purposes of ownership in a bankruptcy proceeding and accrual for purposes of the statute of limitations." *Brown*, 363 B.R. at 605; *see also Cusano*, 264 F.3d at 947. While these two inquiries are different,

> it is often necessary to look to state law on the statute of limitations to determine

---

[4] Neither party discusses which state law should apply. When choosing the applicable state substantive law while exercising diversity jurisdiction, a federal district court applies the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). For tort claims, Maryland generally adheres to the *lex loci delecti commissi*, or place of harm, principle to determine the applicable state's substantive law. *Hauch v. Connor*, 295 Md. 120, 123-24 (1983). Here, the parties appear to agree that both the negligence and the damage to credit and credit standing occurred in Maryland, so Maryland law should apply.

7

> when a cause of action accrues because accrual rarely is discussed apart from the issue of the running of the statute of limitations. When this is the case, the court must be careful to extract accrual principles only, and not principles of discovery and tolling.

*State Farm Life Ins. Co. v. Swift (In re Swift)*, 129 F.3d 792, 796 n.18 (5th Cir. 1997).[5] In Maryland, "a cause of action accrues when: (1) the legally operative facts permitting the filing of a claim come into existence; and (2) the claimants have notice of the nature and cause of their injury." *Miller*, 287 B.R. at 50 (collecting cases).[6]

---

[5] Indeed, "[a] cause of action can accrue for ownership purposes before the statute of limitations for that cause of action has begun to run." *See id.* at 798 (noting that, in Texas, the discovery rule does not apply to the accrual of an action for purposes of bankruptcy estate property).

[6] The cases cited in the *Miller* decision for the notice requirement concern accrual for purposes of limitations. *See, e.g., Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95-96 (2000) ("The discovery rule tolls *the accrual of the limitations period* . . . . Thus, before an action is said to have accrued, a plaintiff must have notice of the nature and cause of his or her injury." (emphasis added)). As the *Swift* court cautioned, when determining accrual of a cause of action for the purposes of bankruptcy estate property, "the court must be careful to extract accrual principles only, and not principles of discovery and tolling." *Swift*, 129 F.3d at 796 n.18. In fact, several other courts have held that all that is required for a cause of action to vest to a bankruptcy estate is that it "could have been" brought prior to the bankruptcy. *See Cusano*, 264 F.3d at 947; *Brown*, 363 B.R. at 605-06; *Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 546-47 (D.Del. 2005); *Bailey v. Household Fin. Corp. III (In re Bailey)*, 306 B.R. 391, 392 (Bankr.D.Colo. 2004). This issue need not be resolved here, however, because regardless of

8

As with all other estate property, "[i]f a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999); *Capital Source Fin., LLC v. Delco Oil, Inc.*, 625 F.Supp.2d 304, 310 (D.Md. 2007). Moreover, until the trustee abandons a cause of action that is rightfully part of the bankruptcy estate, no one else has standing to pursue it. *See Nat'l Am. Ins. Co.*, 187 F.3d at 441; *see also* 11 U.S.C. § 554. A trustee can abandon a claim in one of three ways:

> First, the trustee, after notice and a hearing, may abandon any property deemed burdensome or of inconsequential value to the estate. [11 U.S.C.] § 554(a). Second, the bankruptcy court, at the request of a party and after notice and hearing, may order the trustee to abandon any property. *Id.* § 554(b). Finally, property is abandoned by operation of law if it has been formally scheduled and not otherwise administered at the time the bankruptcy case is closed. *Id.* § 554(c) ("Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of the case is abandoned to the debtor . . . .").

*See Miller*, 287 B.R. at 51.

---

whether notice is required, Borlo's causes of action against Navy Federal accrued prior to the filing of his bankruptcy petition.

In this case, the parties do not dispute that an individual's causes of action may constitute property that vests in the bankruptcy estate upon the filing of a bankruptcy petition. Rather, the parties contest when the causes of action accrued: Navy Federal asserts that the claims accrued prior to the filing of Borlo's bankruptcy case; Borlo disagrees, arguing that they accrued afterward. This issue is dispositive. If Borlo's negligence claim and damage to credit and credit standing claim accrued before the filing of his bankruptcy case, then he lacks standing to bring those claims in this court because there is no indication that the bankruptcy estate ever abandoned these claims: the trustee did not abandon the causes of action at issue under 11 U.S.C. § 554(a); the bankruptcy court did not order the trustee to abandon any causes of action under § 554(b); and — most importantly here — Borlo never scheduled any causes of action per § 521(1) so as to permit abandonment under § 554(c). (*See* ECF No. 16-4, at 4).

a.  **Negligence**

Borlo's negligence claim relates to the procurement of the installment loan, not its collection.[7] Therefore, the "legally

---

[7] For this same reason, Borlo's argument that Navy Federal did not pursue repayment of the installment loan until October 27, 2009, is of no moment. Whether Navy Federal considered the installment loan an asset of the bankruptcy estate has nothing

operative facts permitting the filing of a [negligence] claim [against Navy Federal came] into existence" in November 2006, when Navy Federal made the installment loan to Paxton. *See Miller*, 287 B.R. at 50. Borlo could have brought a negligence claim against Navy Federal as early as November 2006.

As to notice, the second element of when a cause of action accrues in Maryland, Borlo admits that "during a credit check to identify creditors in the preparation of his bankruptcy petition[, he] learned that there was a loan purportedly made to him by Navy Federal." (ECF No. 17, at 2). At that point, Borlo was at least on inquiry notice that he had a potential cause of action against Navy Federal. *See Anne Arundel Cnty., Md. v. Halle Dev., Inc.*, 408 Md. 539, 562 (2009) ("Being on inquiry notice means having knowledge of circumstances which would cause a reasonable person in the position of the plaintiffs to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [cause of action]." (internal quotation marks omitted)). Once on inquiry notice, Borlo had a duty to seek out facts supporting the cause of action. *See Edwards v. Demedis*, 118 Md.App. 541, 553 (1997). In other words, he had "notice of the nature and cause of [his] injury." *See Miller*, 287 B.R. at 50. That he may not have

---

to do with Borlo's potential cause of action against Navy Federal for negligence.

completely learned the origins of the installment loan until after the bankruptcy proceedings is of no consequence.[8]

Accordingly, Borlo's negligence cause of action against Navy Federal accrued for purposes of bankruptcy estate property before the filing of his bankruptcy petition. Borlo therefore lacks standing to raise the negligence claim against Navy Federal for the installment loan. Navy Federal's motion to dismiss will be granted as to this count.

b. **Damage to Credit and Credit Standing**

As a threshold matter, it is not entirely clear whether a cause of action for damage to credit and credit standing exists in Maryland. Borlo does not cite to any statute or case that recognizes this claim. For its part, Navy Federal insists that there is no common law cause of action for damage to credit and credit standing. (ECF No. 16). A close reading of Borlo's complaint, however, suggests that his claim is in the nature of one for libel, which is recognized in Maryland. (*See, e.g.*, ECF No. 2 ¶ 23 ("Defendant . . . has also reported this 'delinquent

---

[8] Furthermore, that Borlo may not have known that he had a *legal* cause of action against Navy Federal does not matter. *See Miller*, 287 B.R. at 50 ("Even a cause of action that the debtor, when filing the petition, did not know the law granted belongs to the estate. Property of the debtor does not escape the bankruptcy estate merely because the debtor is unaware of its existence." (citing 5 *Collier on Bankruptcy* ¶ 541.08 (15th ed. 2002))). It is sufficient that he was on notice as to the underlying *facts* giving rise to the cause of action.

debt' to the national credit reporting agencies which has damaged Plaintiff's credit.")).[9]

To that end, the decision of the Court of Appeals of Maryland in *Sears, Roebuck & Co. v. Ulman*, 287 Md. 397 (1980), is instructive.[10] In *Sears, Roebuck & Co.*, the plaintiff sued the defendant for libel and negligence based on allegations that the defendant "falsely reported to a credit reporting agency that the plaintiff's credit account with [defendant] was delinquent." *Id.* at 399. Arguing that the limitations period for either claim had run, the defendant asserted that the claims had accrued when the defendant reported the incorrect information to the credit agencies. *Id.* The plaintiff countered that the claims did not accrue until three years later when, after unsuccessfully applying for a new credit account, he ordered a copy of his credit report and discovered the incorrect information. *Id.* Applying the discovery rule, the court agreed with the plaintiff, holding that "the cause of action . . .

---

[9] Borlo's complaint, as opposed to his motion papers, does not allege any facts concerning the method of the attempted collection efforts. In any event, any claims relating to collection efforts are likely preempted by the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*

[10] *Sears, Roebuck & Co.* discussed the definition of accrual as it relates to limitations, but this discussion is nonetheless helpful in determining the latest point at which Borlo's cause of action for damage to credit and credit standing accrued for bankruptcy estate property purposes. *See Swift*, 129 F.3d at 796-98.

13

accrues when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff." *Id.* at 401; *accord Schelhaus v. Sears Holding Corp.*, No. 1:09-cv-1145, 2009 WL 4728989, at *2 (D.Md. Dec. 3, 2009).

Here, the "legally operative facts permitting the filing of a [libel] claim [against Navy Federal came] into existence" when Navy Federal first reported a delinquency on the installment loan to national credit reporting agencies. *See Miller*, 287 B.R. at 50. This would have taken place sometime after November 2006, when Navy Federal made the installment loan to Paxton, and before January 2008, when Borlo discovered the unpaid installment loan on his credit report. Therefore, Borlo could have brought a claim for damage to credit and credit standing against Navy Federal at least by January 2008, before he filed for bankruptcy.

Regarding notice, Borlo runs into the same problem as he does with his negligence claim: as in *Sears, Roebuck & Co.*, he was on "notice of the nature and cause of [his] injury" when he discovered the existence of the installment loan on his credit record before he filed his bankruptcy petition. *See Miller*, 287 B.R. at 50. Therefore, Borlo's cause of action for damage to his credit and credit standing accrued for purposes of

bankruptcy estate property prior to the filing of his bankruptcy petition.

Borlo's allegations regarding the "continual damage" he has suffered and will suffer due to Navy Federal's continued reporting of this "'debt' as a 'debt' of Plaintiff's until June of 2014" cannot salvage his claim of damage to credit and credit standing. (*See* ECF No. 2 ¶¶ 23, 26). In libel or defamation cases, Maryland likely follows the "single publication rule," which states that "only one action for damages can be maintained as to any single publication." *See Hickey v. St. Martin's Press, Inc.*, 978 F.Supp. 230, 235-36 (D.Md. 1997). Here, Navy Federal's report of the installment loan is a single publication. Each subsequent repetition by Navy Federal of that report to national credit agencies does not constitute a separate cause of action. Only the original reporting amounts to a valid claim, which accrued no later than when Borlo discovered the erroneous information.

As such, Borlo lacks standing to raise this claim for damage to credit and credit standing, and Navy Federal's motion to dismiss will be granted as to this count.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendant Navy Federal Credit Union will be granted pursuant to Fed.R.Civ.P. 12(b)(1). A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
